

2000 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

7-27-2000

# Gunter v. Ridgewood Energy

Precedential or Non-Precedential:

Docket 00-5053

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2000

Recommended Citation

"Gunter v. Ridgewood Energy" (2000). *2000 Decisions.* Paper 154.
http://digitalcommons.law.villanova.edu/thirdcircuit_2000/154

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2000 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed July 27, 2000

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

NO. 00-5053

PATRICIA GUNTER; HUBERT MAEHR; ANNA BARTOSH,
and all persons similarly situated, Appellants

v.

RIDGEWOOD ENERGY CORPORATION;
ROBERT E. SWANSON; GARY L. HALL;
HALL-HOUSTON OIL COMPANY

On Appeal From the United States District Court
For the District of New Jersey
(D.C. Civ. No. 95-cv-00438)
District Judge: Honorable William H. Walls

Submitted Under Third Circuit L.A.R. 34.1(a)
May 23, 2000

Before: BECKER, Chief Judge, ROTH and ROSENN,
Circuit Judges.

(Filed July 27, 2000)

> G. MARTIN MEYERS, ESQUIRE
> Law Office of G. Martin Meyers, P.C.
> 35 West Main Street, Suite 106
> Denville, NJ 07834
>
> JOSEPH STERNBERG, ESQUIRE
> Goodkind, Labaton, Rudoff, &
> Sucharow, LLP
> 100 Park Avenue
> New York, NY 10017
>
> Counsel for Appellants

DOUGLAS S. EAKELEY, ESQUIRE
LOWENSTEIN SANDLER, ESQUIRE
65 Livingston Avenue
Roseland, NJ 07068

Counsel for Appellees
Ridgewood Energy and
Robert E. Swanson

WILLIAM T. REILLY, ESQUIRE
McCarter & English
100 Mulberry Street
Four Gateway Center
Newark, NJ 07101-0652

Counsel for Appellees
Gary L. Hall and Hall-Houston
Oil Co.

OPINION OF THE COURT

BECKER, Chief Judge.

This is an appeal from an order of the District Court ruling on an attorneys' fee application following the settlement of a complicated class action that resulted in a $9.5 million settlement for the benefit of the named plaintiffs and unnamed class members. In accordance with their agreement with their clients (the class representatives), and the terms of the class action notice to which no class member objected, plaintiffs' attorneys ("Counsel") applied for attorneys' fees, amounting to one-third of the settlement amount, and approximately $300,000 in costs. The District Court approved the settlement and Counsel's request for reimbursement of costs, but allowed fees of only 18% of the settlement fund, or $1.71 million--far less than the $3.16 million to which the plaintiffs and class members had agreed (or at least, not objected to).

Counsel's papers forcefully portray this case as extremely difficult, their labors as extensive, and the results achieved for the class as quite favorable. Despite this portrayal,

2

supported by voluminous documentation and the absence of objection, the District Court explained its decision to virtually halve the requested fee award in a conclusory one-sentence statement: "The nature of this litigation, its resolution at this stage without the necessity of trial, the nature of the settlement, and its value, convince the court that it would place a reasonable burden on the class to award attorneys' fees of 18% of the Settlement Fund, or $1,700,000." Gunter v. Ridgewood Energy Corp. , Civ. No. 95-438 (WHW), at 3 (D. N.J. Nov. 16, 1999).

The Court slightly expanded upon that statement in an order denying a motion for reconsideration, stating that it had examined the record carefully before making its award and that it did not "credit the unexplained and undetailed expenditure of 2500 hours by counsel . . . ." Gunter v. Ridgewood Energy Corp., Civ. No. 95-438 (WHW), at 2 (D. N.J. Dec. 29, 1999) (citing the 2500 hours allegedly expended by one of the attorneys as a "mere[ ] . . . hindsight prop"). While refusing to credit these hours, the Court declined Counsel's invitation to review billing records that Counsel had offered to provide the Court in their initial fee application. Moreover, the Court did not explain why it refused to credit 2500 hours of the approximately 8500 hours Counsel had worked on the case, even though Counsel proffered documentation for that work.

On appeal, Counsel submit that the District Court failed adequately to explain its reasons for declining to grant their requested fee award, and that it did not apply the relevant criteria for determining such an award. Our jurisprudence in this area requires a " `thorough judicial review of fee applications . . . in all class action settlements.' " In re Prudential Ins. Co. of Am. Sales Practice Litig., 148 F.3d 283, 333 (3d Cir. 1998) (quoting In re General Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig., 55 F.3d 768, 819 (3d Cir. 1995)). Without a reasoned and documented explication of the rationale for approving or denying a particular fee award, it is difficult, if not impossible, for an appellate court to review such an award for abuse of discretion.

Such is the case here. The District Court's opinion making the fee award and its subsequent opinion denying

reconsideration are vague and conclusory. These opinions do not address or apply the relevant criteria, established by our jurisprudence, that a district court should consider in awarding attorneys' fees in a class action. Under the circumstances, we cannot properly review the reasonableness of the fee award. We will therefore vacate the challenged order and remand for proceedings consistent with this opinion.

I.

A.

This case arises from a series of failed oil and gas investments. The named plaintiffs as well as the unnamed class members were investors in a series of limited partnerships involving oil and gas interests formed and promoted by the defendants named in the caption. According to the plaintiffs, the defendants fraudulently marketed and sold approximately $150 million worth of interests in the partnerships between 1986 and 1990. The plaintiffs brought suit in January 1995, alleging violations of the Racketeer Influenced and Corrupt Organization Act ("RICO") and SS 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Securities Exchange Act"). The complaint also asserted pendent state law claims for fraud and deceit, breach of fiduciary duty, and negligent misrepresentation. In terms of relief, the plaintiffs sought damages as well as the imposition of a constructive trust.

Discovery and pretrial motion practice ensued for the next several years. Counsel's papers reflect that they traveled across the country performing myriad tasks related to the case, including defending depositions and deposing numerous witnesses; conducting informal background investigations into the defendants' allegedly fraudulent scheme; reviewing voluminous documentary evidence; meeting with clients and potential class members; and retaining and consulting with experts in the areas of geology, oil and gas production, and oil and gas reservoirs. Counsel also document that they spent a great deal of time litigating pretrial issues before the Magistrate Judge and

4

District Judge assigned to the case. Most notably, Counsel point to the fact that they successfully argued a motion to certify the class, and that they were victorious in litigating several key discovery disputes.

In 1997, both sides moved for partial summary judgment. After further discovery, the District Court denied the plaintiffs' motion, and granted summary judgment for the defendants with respect to the plaintiffs' claims under the Securities Exchange Act and the breach of fiduciary duty claim brought against one of the defendants. The Court denied the defendants' motion with respect to the plaintiffs' RICO and other state law claims. Counsel submit that their efforts to defend against summary judgment on their clients' RICO claims are noteworthy for, during the pendency of this litigation, Congress enacted the Private Securities Litigation Reform Act of 1995, Pub. L. No. 104–67, 109 Stat. 737 (codified as amended at 15 U.S.C. SS 77z–1 to 78u–5), and the Supreme Court issued a RICO decision, Klehr v. A.O. Smith Corp., 521 U.S. 179 (1997), both of which could have been interpreted as barring the plaintiffs' RICO claims. Yet, according to Counsel, they were able to convince the District Court that neither the Act nor Klehr barred their clients' claims, even though case law from other jurisdictions appeared to hold otherwise.

The District Court thereafter set a trial date, and the parties revived settlement talks that had been ongoing since the inception of the litigation. Settlement discussions had initially stalled because the defendants had informed Counsel that they lacked the financial resources to fund any settlement in excess of $1 million. Eventually, however, the parties' discussions proved successful, and in June 1999, Counsel procured, and their clients agreed to, a settlement of $9.5 million. According to the "Notice of Proposed Settlement of Class Action," which was sent to plaintiffs and class members, but was not an "expression of opinion by the [District] Court on the merits of the Litigation or the Proposed Settlement," App. at 87, the "plaintiffs' damages expert" estimated that "the total loss of investment principal sustained by the Class [was] equal to approximately $18.7 million. The proposed settlement amount of $9.5 million represents more than half of that

5

amount." Id. at 89. The settlement provided for payments by the defendants over four years, including $4 million that was paid on June 30, 1999; $1.5 million that was due on or before June 30, 2000; $1.5 million due on or before June 30, 2001; $1.25 million due on or before June 30, 2002; and $1.25 million due on or before June 30, 2003. According to the settlement terms, Counsel remain responsible for overseeing the distribution of these payments.

B.

Having successfully resolved their clients' action, Counsel submitted to the District Court a fee and cost award application, which was accompanied by extensive declarations detailing the nature, quality, and amount of work that Counsel had performed. Based on the alleged lengths that Counsel went to prosecute their clients' case, the claimed difficulty of the case and excellence of the result achieved, and the size of fee awards in similar cases, Counsel requested a cost award of roughly $300,000, and a fee award of 33 1/3% of the $9.5 million settlement. According to Counsel, their requested fee award was not excessive in that it only represented approximately 1.1 times their "lodestar" amount; i.e., the number of hours that Counsel reasonably had worked on plaintiffs' case multiplied by the reasonable hourly rate they could charge for such services on the market. Counsel also sent to the plaintiffs and class members, in a form approved by the Court, a "Notice of Proposed Settlement of Class Action," informing them that Counsel would request the award of legal fees "not to exceed 33 and 1/3%" of the settlement award. App. at 89. The notice explained procedures for objecting to Counsel's application, but none of the plaintiffs or class members raised any objections. Counsel argued to the District Court that their fee request was fair and reasonable when one took all of these factors into account.

In a terse opinion, the District Court approved Counsel's request for costs, but set the fee award at 18% of the settlement fund, or $1.71 million, which was to be paid with interest over time. The Court's analysis, in full, was as follows:

6

    This court has carefully reviewed the submissions of
    plaintiffs' counsel, their stated efforts required to settle
    this litigation, and the number of hours expended. The
    nature of this litigation, its resolution at this stage
    without the necessity of trial, the nature of the
    settlement, and its value, convince the court that it
    would place a reasonable burden on the class to award
    attorneys' fees of 18% of the Settlement Fund, or
    $1,700,000. Additionally, the request for interest is
    granted because the settlement involves yearly
    payments by the defendants until 2003 and plaintiffs'
    attorneys will only receive their fees as money is paid
    into the escrow account. The court also grants
    plaintiffs' attorneys' request for reimbursement of their
    expenses in the amount of $158,152.65 for the Law
    Offices of G. Martin Meyers and $142,063.29 for
    Goodkind, Labaton, Rudoff & Sucharow LLP.

Gunter v. Ridgewood Energy Corp., Civ. No. 95-438 (WHW),
at 3 (D. N.J. Nov. 16, 1999).

Counsel moved for reconsideration, contending that the
18% fee award represented a penalty to Counsel, because
it entitled them to only 55% of their lodestar. The District
Court rejected this argument, writing,

    The Court considered all relevant factors at the time
    the fee was set, including the lodestar and the efforts
    of counsel to settle the action, and concluded, upon a
    detailed examination of the exhibits submitted with the
    fee application, that the determined 18% was a
    reasonable fee to counsel.

    As said at oral argument, the Court does not credit
    the unexplained and undetailed expenditure of 2500
    hours by counsel--such is the equivalent of one
    hundred and four 24-hour days, or three hundred and
    twelve 8-hour days, or four hundred and sixteen 6-
    hour days. How were such hours and such days
    devoted to plaintiffs' cause? Such a considerable
    amount of time cannot be unexplainable. The Court is
    of the opinion that these hours merely serve as a
    hindsight prop to the one-third percentage of plaintiffs'
    recovery sought by counsel as their fee. Counsel had

7

their opportunity to provide full information to the
Court upon their original submission. They did not.
And, interestingly, they did not even attempt to do so
by their motion for reconsideration. The motion for
reconsideration is denied.

Gunter v. Ridgewood Energy Corp., Civ. No. 95-438 (WHW),
at 2-3 (D. N.J. Dec. 29, 1999).

Counsel timely appealed, challenging the District Court's
reduction of their requested fee award. Defendants in the
underlying litigation, as well as the named plaintiffs and
unnamed members of the class, have elected not to
participate in this appeal. We have jurisdiction pursuant to
28 U.S.C. S 1291. The District Court had jurisdiction under
28 U.S.C. SS 1331, 1367; 18 U.S.C. SS 1964(a) and (c); and
15 U.S.C. S 78aa.

II.

Counsel submit that the District Court abused its
discretion in not awarding them their requested fee. They
point to the several factors that district courts are charged
with considering in awarding fees, and contend both that
these factors militate in favor of Counsel's requested
percentage fee, and that the District Court failed to take
these factors into account in reaching its ultimate award
decision. Our jurisprudence governing fee awards is well
developed and familiar; and hence we relegate to the
margin our recital of the factors that district courts should
consider in awarding fees.1

_____

1. In common fund cases of this sort--in which the attorneys' fees and
the clients' award come from the same source and the fees are based on
a percentage amount of the clients' settlement award--district courts
should consider several factors in setting a fee award. Among other
things, these factors include: (1) the size of the fund created and the
number of persons benefitted; (2) the presence or absence of substantial
objections by members of the class to the settlement terms and/or fees
requested by counsel; (3) the skill and efficiency of the attorneys
involved; (4) the complexity and duration of the litigation; (5) the risk
of
nonpayment; (6) the amount of time devoted to the case by plaintiffs'
counsel; and (7) the awards in similar cases. See In re Prudential Ins.
Co.

8

Counsel also represent that in their initial fee application
they offered to provide detailed billing records to
substantiate the number of hours they billed to the
plaintiffs' case, but that the District Court never asked to
see these records, notwithstanding the Court's stated

_____

of Am. Sales Practice Litig., 148 F.3d 283, 336-40 (3d Cir. 1998); In re
General Motors Corp. Pick-Up Truck Fuel Tank Products Liability
Litigation, 55 F.3d 768, 819-22 (3d Cir. 1995); MOORE'S FEDERAL PRACTICE,
MANUAL FOR COMPLEX LITIGATION (THIRD) S 24.121,at 207 (1997) (hereinafter
"MANUAL FOR COMPLEX LITIGATION"). In cases involving extremely large
settlement awards--for example, those over one billion dollars--district
courts are counseled to give these factors less weight. See In re
Prudential, 148 F.3d at 338-40.

In mainstream cases, such as this one, we have also suggested that
district courts cross-check the percentage award at which they arrive
against the "lodestar" award method, which is normally employed in
statutory fee-award cases. See id. at 333 (noting that "[t]he lodestar
method is more commonly applied in statutory fee-shifting cases, and is
designed to reward counsel for undertaking socially beneficial litigation
in cases where the expected relief has a small enough monetary value
that a percentage-of-recovery method would provide inadequate
compensation"). A court determines an attorney's lodestar award by
multiplying the number of hours he or she reasonably worked on a
client's case by a reasonable hourly billing rate for such services given
the geographical area, the nature of the services provided, and the
experience of the lawyer. See id. at 331 n.102; Court Awarded Attorney
Fees, Report of the Third Circuit Task Force, 108 F.R.D. 237, 243 (1985)
(hereinafter "Task Force Report"). After arriving at this lodestar figure,
the
district court may, in certain circumstances, adjust the award upward or
downward to reflect the particular circumstances of a given case. See In
re Prudential, 148 F.3d at 338-40; In re General Motors, 55 F.3d at 821-
22. These calculations should be reduced to writing. See In re Prudential,
148 F.3d at 340-41 (noting that courts must "take care to explain" how
they apply the lodestar factor; "[w]ith no explanation for its
application,
we have no basis to evaluate it"); see also Task Force Report, 108 F.R.D.
at 252-53; MANUAL FOR COMPLEX LITIGATION, supra, SS 24.121, 24.122, at
206, 209-210.

The eight factors listed above need not be applied in a formulaic way.
Each case is different, and in certain cases, one factor may outweigh the
rest. For reasons detailed below, what the district court is required to
do
before reaching such a conclusion is principally to explain why. See infra
Sections II.A-B.

9

disbelief that Counsel worked the number of hours that they submitted they had. Counsel argue that the District Court abused its discretion in not crediting the number of hours Counsel worked without ever having reviewed these records or having them reviewed either by a special master or the Magistrate Judge who essentially managed the case through to settlement and handled the discovery. Before turning to the merits of these two arguments, we briefly discuss our standard of review.

A.

We give great deal of deference to a district court's decision to set fees. See In re General Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig., 55 F.3d 768, 782 (3d Cir. 1995); see also MOORE'S FEDERAL PRACTICE, MANUAL FOR COMPLEX LITIGATION (THIRD) S 24.121, at 206 (1997) (hereinafter "MANUAL FOR COMPLEX LITIGATION"). Notwithstanding our deferential standard of review, it is incumbent upon a district court to make its reasoning and application of the fee-awards jurisprudence clear, so that we, as a reviewing court, have a sufficient basis to review for abuse of discretion. See MANUAL FOR COMPLEX LITIGATION, supra, S 24.121, at 206 ("The court awarding [attorneys' fees] should articulate reasons for the selection of the given percentage sufficient to enable a reviewing court to determine whether the percentage selected is reasonable.") (collecting cases).

Though a district court may have many good reasons to set or reduce a proposed fee award, if those reasons are not explicated, at least in some meaningful degree, we can arrive at one of only two conclusions: either (1) that the district court had good reasons based on the factors enumerated, supra, in footnote 1 to award the fees that it did; or (2) that it ignored those factors and picked an award figure arbitrarily. Either way, if the district court's fee-award opinion is so terse, vague, or conclusory that we have no basis to review it, we must vacate the fee-award order and remand for further proceedings. See Court Awarded Attorney Fees, Report of the Third Circuit Task Force, 108 F.R.D. 237, 245 (1985) (hereinafter"Task Force Report") (noting that "conclusory statements [denying or

10

setting award figures] often are subject to reversal and remand"). For us to act as seers and to attempt to soothsay what was on the district court's mind when setting a fee award is a waste of judicial resources.

Moreover, if a district court does not fulfill its duty to apply the relevant legal precepts to a fee application, it abuses its discretion by not exercising it. See Hensley v. Eckerhart, 461 U.S. 424, 437 (1983) ("It remains important . . . for the district court to provide a concise but clear explanation of its reasons for the fee award."). As the Third Circuit Task Force on Court Awarded Attorney Fees noted,

> "district courts, in awarding attorneys' fees, may not reduce an award by a particular percentage or amount (albeit for justifiable reasons) in an arbitrary or indiscriminate fashion. If the court believes that a fee reduction . . . is indicated, it must analyze the circumstances requiring the reduction and its relation to the fee, and it must make specific findings to support its action."

Id. at 253 (quoting Cunningham v. City of McKeesport, 753 F.2d 262, 269 (3d Cir. 1985), vacated on other grounds, 478 U.S. 1015 (1986)) (emphasis added by Task Force Report).

B.

The problem in this case is that the District Court dealt with the fee-award issue in a cursory and conclusory fashion. The Court spent little more than a few sentences in its two opinions analyzing the fee-award issue in this case. See supra Section I.B (reproducing, in its entirety, the Court's analysis of the fee-award issue). Even after reading the District Court's opinions, it remains difficult to discern both how the Court arrived at the 18% award figure, and why it reached certain other conclusions that it did. The Court mentioned the costs award factors that a court should consider in such circumstances, but did not apply any of the factors, at least insofar as we can ascertain.

The Court's analysis in its two opinions therefore constitutes an abuse of discretion for two principal reasons. First, the Court's statements (reproduced in the margin2)

─────────────────────────────────────

2. See, e.g., Gunter v. Ridgewood Energy Corp., Civ. No. 95-438 (WHW), at 3 (D. N.J. Nov. 16, 1999) ("This court has carefully reviewed the

11

that it reviewed the record and applied the relevant case law are an ipse dixit insofar as they are unsupported by careful analysis explicated in written opinions or rulings from the bench. Even trusting the verity of such statements, they give us little, as a reviewing court, with which to work. Unfortunately, a large part of the District Court's analysis consisted of such statements, which in our view, do not constitute sufficiently "articulate[d] reasons for the selection of a given [fee] percentage . . . ." MANUAL FOR COMPLEX LITIGATION, supra, S 24.121, at 206.

Second, and more importantly, when the Court did reference the fee-award factors in its opinions, it neither engaged those factors nor explained its reasoning. In the entirety of its analysis of the issue in its first opinion, the Court wrote: "[1] The nature of this litigation, [2] its resolution at this stage without the necessity of trial, [3] the nature of the settlement, and [4] its value, convince the court that it would place a reasonable burden on the class to award attorneys' fees of 18% of the Settlement Fund, or $1,700,000." Gunter v. Ridgewood Energy Corp. , Civ. No. 95-438 (WHW) (D. N.J. Nov. 16, 1999) (numbers added). In its opinion denying Counsel's motion for reconsideration, the Court advanced a fifth reason for awarding the fee it did. It expressed disbelief that Counsel worked the number of hours they claimed they did on behalf of the class. See Gunter v. Ridgewood Energy Corp., Civ. No. 95-438 (WHW), at 2-3 (D. N.J. Dec. 29, 1999). In the next Section, we address, in turn, each of these enumerated considerations, as well as the District Court's ultimate conclusion. In so doing, we explain why each factor was given too short shrift or was misapplied. We also mention certain factors the Court did not consider, but should have.

_____

submissions of the plaintiffs' counsel, their stated efforts required to settle this litigation, and number of hours expended."); Gunter v. Ridgewood Energy Corp., Civ. No. 95-438 (WHW), at 2 (D. N.J. Dec. 29, 1999) ("The Court considered all relevant factors at the time the fee was set, including the lodestar and the efforts of counsel to settle the action,
and concluded, upon a detailed examination of the exhibits submitted with the fee application, that the determined 18% was a reasonable fee to counsel.").

12

C.

1.

The complexity and duration of the litigation is thefirst factor a district court can and should consider in awarding fees. See supra note 1. From all appearances, this was a complex case, involving the intersection of federal and state law, common and public law, and more specifically securities law, RICO, oil and gas law, and myriad state law claims. The case was actively litigated for over four-and-a-half years, and Counsel were forced to file motions dealing with, inter alia, class certification, complicated discovery disputes, and the vagaries of RICO statute-of-limitations law. Moreover, according to Counsel's representations, they not only deposed numerous witnesses, but also consulted many experts in the field, and successfully defended against a summary judgment motion that was bolstered by authority from other jurisdictions that apparently supported the defendants' litigation position.

In reducing Counsel's fee request from 33 1/3% to 18% the District Court did not say that this was an uncomplicated matter or one of a relatively short duration as compared to similar cases; it merely mentioned the "complexity and duration" factor. Perhaps the Court could have reached such a reasoned conclusion, as it is more familiar with this litigation than this court, even though we have taken pains to review the extensive record. But without that type of statement in the District Court's opinion, it would seem that the "complexity and duration" factor would weigh in Counsel's favor. Therefore, we cannot confidently rely on this factor when, in accordance with our deferential standard of review, we endeavor to accede to the judgment of the District Court.3

_____

3. In reaching this conclusion, we note that it is the practice in the District Court in New Jersey, unlike, for example, in the Eastern District of Pennsylvania, for magistrate judges to manage cases, even of this size, before they proceed to trial. Given this arrangement--and the greater familiarity of magistrate judges with the complexity and quality of lawyering in cases that do not reach trial--district courts in such districts might wish to consider referring fee and cost applications to the
magistrate judge familiar with the case for a report and recommendation, even if only for help respecting the fee-award factors listed in footnote 1,
supra.

13

2.

The second factor that the District Court invoked in its initial opinion was the fact that this case was resolved via settlement without the need to go to trial. For reasons explained below, if the Court relied on this fact to deny Counsel their requested fee award, it misapplied the law. Commentators discussing fee awards have correctly noted that "one purpose of the percentage method" of awarding fees--rather than the lodestar method, which arguably encourages lawyers to run up their billable hours--"is to encourage early settlements by not penalizing efficient counsel . . . ." MANUAL FOR COMPLEX LITIGATION, supra, S 24.121, at 207 (citing 3 HERBERT B. NEWBERG & ALBA CONTE, NEWBERG ON CLASS ACTIONS S 14.03, at 14-3 to 14-7 (3d ed. 1992)).

If the District Court, in fact, denied Counsel their requested fee award merely because Counsel were able to settle this complicated matter, then the Court ignored the stated goal in percentage fee-award cases of "ensuring that competent counsel continue to be willing to undertake risky, complex, and novel litigation." Id.  (citing Deposit Guaranty Nat'l Bank v. Roper, 445 U.S. 326, 338-39 (1980) (recognizing the importance of a financial incentive to entice qualified attorneys to devote their time to complex, time-consuming cases in which they risk non-payment)). Procuring a settlement, in and of itself, is never a factor that the district court should rely upon to reduce a fee award. To utilize such a factor would penalize efficient counsel, encourage costly litigation, and potentially discourage able lawyers from taking such cases. 4

_____

4. That is not to say that when a case settles counsel do not reduce the risk of losing at trial, avoid non-recovery, and limit the number of hours that they will ultimately devote to a case. But the risk of nonpayment and the amount of time devoted to a case by counsel are separate factors that should not be conflated with the outcome of a particular case. See supra note 1; see also infra Sections II.C.4-5 (discussing the "risk of nonpayment" and the "amount of time devoted" factors).

14

3.

The size of the settlement fund created and the number of persons benefitted is another important factor in fee-award cases; so too is comparing awards in similar cases. See supra note 1. The District Court's reference to the "nature of the settlement" in this case and"its value," Gunter v. Ridgewood Energy Corp., Civ. No. 95-438 (WHW), at 2 (D. N.J. Nov. 16, 1999)--without any analysis of whether the $9.5 million that Counsel were able to procure from the defendants was a favorable settlement for the plaintiffs in view of the problems of this litigation, or as compared to similar cases--does little to justify the Court's decision to limit Counsel's requested fee award. Therefore, based on the record before us and the reasons (not) explicated in the District Court's opinion, the"size and nature of the settlement award" do not appear to be an adequate basis for the District Court's reduction of fees. That is not to say that such a basis does not exist, or that the Court did not have good reasons, which it did not articulate, for reducing Counsel's fee award to 18%. In a fully explicated opinion, the District Court could articulate the soundness of its reasoning.5

_____

5. We note that during the hearing on Counsel's motion to reconsider, the Court stated that it "had, in its own experience, determined that percentage bases much lower than 18 percent are quite appropriate." Transcript of Proceedings filed Feb. 28, 2000, Gunter v. Ridgewood Energy Corp., Civ. No. 95-438 (WHW), at 6 (D. N.J.). This citationless determination not only seems inconsistent with developed case law, it does not amount to comparing explicitly the fee award in this case to those awarded in similar cases--the mode of analysis that we believe necessary when applying this factor.

In assessing "size of the settlement" factor and whether the settlement was favorable to the plaintiffs and class members, the District Court may also want to determine what percentage of the plaintiffs' and class members' approximated actual damages the settlementfigure represents. See Entin v. Barg, 412 F. Supp. 508, 511 (E.D. Pa. 1976). This figure, when viewed in context of the risk of non-recovery, see id. at 517-18, may be helpful in determining how well counsel did for their clients, cf. supra Section I.A (discussing representations made by Counsel regarding the size of the plaintiffs' and class members' losses).

15

4.

We turn next to two factors that the District Court did not analyze or at least mention in its two brief opinions. As noted above, no one in the class objected to Counsel's request for fees. Yet, a client's views regarding her attorneys' performance and their request for fees should be considered when determining a fee award. See supra note 1. Additionally, it seems that the risk of non-payment in this case was present both because the defendants were close to insolvency, and because other classes of plaintiffs in similar cases against the defendants had lost on similar legal theories. As noted above, the risk that counsel takes in prosecuting a client's case should also be considered when assessing a fee award. See id. In this case, the District Court should have paid attention to these factors, given that they could have militated against the result it reached.

5.

The last two factors the District Court referenced in its order denying Counsel's motion to reconsider were the lodestar cross-checking factor and the amount of time Counsel devoted to their clients' case. See supra note 1 (discussing these factors). In common fund cases, such as this one, we have suggested that it is advisable to cross-check the percentage award counsel asks for against the lodestar method of awarding fees so as to insure that plaintiffs' lawyers are not receiving an excessive fee at their clients' expense. See In re Prudential Ins. Co. of Am. Sales Practice Litig., 148 F.3d 283, 340-41 (3d Cir. 1998); In re General Motors, 55 F.3d at 820, 821 n.40, 822; see also infra note 6 (discussing the important role that district courts play in safeguarding the interests of plaintiffs and class members when awarding attorneys' fees in cases of this sort). As we have explained, a court determines the lodestar by multiplying the number of hours counsel reasonably worked on a client's case by a reasonable hourly billing rate for such services in a given geographical area provided by a lawyer of comparable experience. See In re Prudential, 148 F.3d at 331 n.102; Task Force Report, 108 F.R.D. at 243.

16

Unfortunately, in this case, the District Court neither reduced its lodestar calculation to writing, nor gave Counsel a chance to justify their hours billed or their hourly rates. In its opinion denying Counsel's motion to reconsider, the Court stated that it had considered the lodestar factor in arriving at its original fee award. See Gunter v. Ridgewood Energy Corp., Civ. No. 95-438 (WHW), at 2 (D. N.J. Dec. 29, 1999). Nowhere, however, in the Court's original fee-award opinion is the lodestar factor even mentioned, much less analyzed. Gunter v. Ridgewood Energy Corp., Civ. No. 95-438 (WHW), at 3 (D. N.J. Nov. 16, 1999). To examine the lodestar factor properly, a Court should make explicit findings about how much time counsel reasonably devoted to a given matter, and what a reasonable hourly fee would be for such services. See supra note 1; see also In re Prudential, 148 F.3d at 340-41; Task Force Report, 108 F.R.D. at 252-53; MANUAL FOR COMPLEX LITIGATION, supra, S 24.122, at 209-10. The District Court made none of these findings in its original opinion, nor did it, in its subsequent opinion, explicitly use a lodestar figure to cross-check against the 18% figure it reached. In merely adverting to its consideration of the lodestar factor in the second opinion, and not analyzing or applying it, the District Court failed to exercise its discretion in such a way that an appellate court could possibly review that decision.

Counsel's original fee application included all of the information necessary to do this cross-checking analysis and to determine how much time Counsel devoted to their clients' case. As is customary in these cases, Counsel submitted extensive briefing and affidavits detailing the hours they spent on the instant litigation, see App. at 91-150, listing the number of hours each lawyer, paralegal, and law clerk worked on the case, see id. at 134-35, 148, and providing documentation supporting the hourly billing rates for which they applied, see id. at 171-74. Rather than submit their actual time records, which were voluminous and maintained by Counsel, Counsel informed the District Court that such records "were available for review by the Court in the event the Court wishes to do so." Id. at 122, P 91. Waiting to submit such detailed records until they were requested by the Court seems consonant with the practice in this circuit. See, e.g., In re Prudential, 148 F.3d

17

at 332 n.107 (noting that "time summaries" were adjudged sufficient in a case in which "the court was only using lodestar analysis as a cross check on the fee award"); id. at 338, 342 (noting further that the district court could permit discovery or request further documentation to verify the statements made in a fee application).

Somewhat inexplicably, however, the District Court rejected the representations made in Counsel's application without requesting or reviewing these additional records, or giving Counsel any indication, before issuing its second opinion, that the Court doubted the veracity of Counsel's claims regarding the number of hours that they expended. Refusing to credit 2500 of the 8424.9 hours submitted by Counsel, and, in the process, chastising Counsel for not explaining and detailing their expenditure of hours, the Court wrote:

> [T]he Court does not credit the unexplained and undetailed expenditure of 2500 hours by counsel-- such is the equivalent of one hundred and four 24- hour days, or three hundred and twelve 8-hour days, or four hundred and sixteen 6-hour days. See Sternberg Aff. Ex. A (2500 hours expended through June 30, 1999); Meyers Aff. Ex. B (440 hours expended through June 30, 1999). How were such hours and such days devoted to plaintiffs' cause? Such a considerable amount of time cannot be unexplainable. The Court is of the opinion that these hours merely serve as a hindsight prop to the one-third percentage of plaintiffs' recovery sought by counsel as their fee. Counsel had their opportunity to provide full information to the Court upon their original submission. They did not. And, interestingly, they did not even attempt to do so by their motion for reconsideration. The motion for reconsideration is denied.

Gunter v. Ridgewood Energy Corp., Civ. No. 95-438 (WHW) (D. N.J. Dec. 29, 1999).

The Court's statements are called into question by Counsel's representations in their fee application that they would provide the Court with these records if the Court so

18

requested, see App. at 122, P 91; hence, the Court's decision to discount 2500 hours that Mr. Sternberg worked without reference to Counsel's proffer seems arbitrary, if not contrary to the facts in the record. Counsel summarized the hours that Mr. Sternberg worked with no less documentation and in no less detail than that of the other 6000 hours submitted by Counsel. In its first opinion in this matter and during the hearings regarding the fee-award issue, the Court never expressed any disbelief that Counsel had devoted as much time to this case as they had represented they had in their initial fee application. Therefore, without further elaboration on the matter by the District Court, it is impossible for us to discern why the Court chose not to credit the number of hours Mr. Sternberg declared that he worked on this case. Similarly, it would have been difficult for Counsel to have known that they should have departed from the usual practice of submitting time report summaries and presented their time support documentation in their entirety. Fundamental fairness requires that Counsel have been given the opportunity to make this proffer before the court rejected Counsel's representations out of hand.

Moreover, according to Counsel's representations, Mr. Sternberg is a seasoned class action attorney who"played a major part in many of the most significant class actions prosecuted" by his firm, which itself has appeared in many major class actions. App. at 141. It is not implausible that as a major partner working on this case for four-and-one-half years he would have billed 2500 hours in the matter. Partners and associates in large law firms involved in complex litigation often bill that many hours in a single year. Even assuming that he worked on several other matters during those four and one-half years, it is not prima facie unbelievable that he would have devoted so many hours to the plaintiffs' and class members'file.

The District Court may well have good reason to discredit Counsel's representations regarding Mr. Sternberg, but not without first having reviewed Counsel's time records, inquiring into other cases Mr. Sternberg was working on at the same time, and documenting the reasons why it did not believe Counsel's representations. Even if Mr. Sternberg did

19

not work 2500 hours on the case, the record reflects that he devoted some amount of time to the named plaintiffs' and class members' cause. The record reveals, for example, that Mr. Sternberg made appearances and arguments in this matter. See, e.g., Transcript of Motions, Gunter v. Ridgewood Energy Corp., Civ. No. 95-438 (WHW), at 37 (D. N.J. Sept. 9, 1999). Therefore, the District Court should not have discounted his hours altogether. And even if the Court were merely reducing the overall hours figure by 2500 hours as a penalty to Counsel for misrepresenting the number of hours certain lawyers worked on this case, the Court should have said so, so that we could review that decision for abuse of discretion.

III.

In sum, the District Court abused its discretion in this case by not exercising it; and when it did exercise it, by misapplying our jurisprudence. We will therefore vacate the order appealed from and remand for further proceedings consistent with this opinion. In so doing, we express no opinion as to what award should ultimately be fixed.6

_____

6. We do note that district courts can avoid many of complications associated with fee awards by setting fee guidelines and ground rules early in the litigation process. Such ground rules may include: developing means of record keeping that facilitate judicial review; providing for periodic reports or status conferences at which counsel can apprise the court of their efforts; establishing a reasonable hourly rate at which counsel can bill their clients for certain services; and capping the amount of time that counsel or certain lawyers staffing the case may spend on a particular matter or issue if they expect to be compensated for all of their efforts. Keeping track of counsel's progress can prevent lawyers from padding their hours or having high priced counsel perform menial tasks. It also allows the court to digest smaller amounts of information at regular intervals, and it gives counsel a better understanding of what the court thinks is reasonable in terms of expenditures and hours billed. Learned treatises on the subject provide helpful suggestions for setting these ground rules and following through on them. See, e.g., MANUAL FOR COMPLEX LITIGATION, supra, SS 24.2-24.214, at 211-14.

20

A True Copy:
Teste:

Clerk of the United States Court of Appeals
for the Third Circuit
_____

Another approach is for the district court to determine the fee arrangement in advance through competitive bidding. See, e.g., In re Amino Acid Lysine Antitrust Litig., 918 F. Supp. 1190, 1192-1201 (N.D. Ill. 1996) (Shadur, J.) (employing this approach); In re Cendant Corp. Litig., 182 F.R.D. 144, 150-52 (D.N.J. 1998) (Walls, J.) (same); In re Wells Fargo Sec. Litig., 157 F.R.D. 467, 468-77 (N.D. Cal. 1994) (Walker, J.) (same). This device appears to have worked well, and we commend it to district judges within this circuit for their consideration.

At all events, whatever approach district courts choose to adopt they must safeguard the plaintiffs and class members' interests, because as is often the case (and as it was here), an attorneys' fee motion filed by successful counsel in a common fund award case goes unopposed. Therefore, the plaintiffs' rights need special protection. See Lindy Bros. Builders, Inc. v. Am. Radiator & Standard Sanitary Co., 487 F.2d 161, 168 (3d Cir. 1973), aff 'd in part and vacated in part, 540 F.2d 102 (3d Cir. 1976) (en banc), (" `[U]nless time spent and skill displayed be used as a constant check on applications for fees there is a grave danger that the bar and bench will be brought into disrepute, and that there will be prejudice to those whose substantive interests are at stake and who are unrepresented except by the very lawyers who are seeking compensation.' ") (quoting Cherner v. Transitron Elec. Corp., 221 F. Supp. 55, 61 (D. Mass. 1963)). To that end, a district court that suspects that the plaintiffs' rights in a particular case are not being adequately vindicated may appoint counsel, a special master, or an expert to review or challenge the fee application filed by plaintiffs' attorneys.

21