**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 24-1874
_____

In re: WAWA, INC. DATA SECURITY LITIGATION


THEODORE H. FRANK,
Appellant

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
District Court No. 2:19-cv-06019
District Judge:  The Honorable Gene E. K. Pratter
_____

Argued April 10, 2025

Before: HARDIMAN, PORTER, and SMITH,
*Circuit Judges*.


(Filed: June 25, 2025)

Adam E. Schulman [**ARGUED**]
Hamilton Lincoln Law Institute
1629 K Street NW
Suite 300
Washington, DC 20006
        *Counsel for Appellant*

Gerard A. Dever
Matthew H. Duncan [**ARGUED**]
Roberta D. Liebenberg
Rachel K. Sommer
Fine Kaplan & Black
One S. Broad Street
Suite 2300
Philadelphia, PA 19107

Samantha E. Holbrook
Benjamin F. Johns
Shub Johns & Holbrook
200 Barr Harbor Drive
Four Tower Bridge, Suite 400
West Conshohocken, PA 19428

Sherrie R. Savett
Berger Montague
1818 Market Street
Suite 3600
Philadelphia, PA 19103
        *Counsel for Plaintiff-Appellee Kenneth Brulinski*

Kristin M. Hadgis

Eric C. Kim
Terese M. Schireson
Gregory T. Parks [**ARGUED**]
Morgan Lewis & Bockius
2222 Market Street
12th Floor
Philadelphia, PA 19103

Michael E. Kenneally
Morgan Lewis & Bockius
1111 Pennsylvania Avenue NW
Suite 800 North
Washington, DC 20004
    *Counsel for Defendants-Appellees WAWA INC. and
    Wild Goose Holding Co.*

Brenna Bird
William Admussen [**ARGUED**]
Office of Attorney General of Iowa
1305 E Walnut Street
Hoover State Office Building, 2nd Floor
Des Moines, IA 50319
    *Counsel for Amicus Curiae Attorney General for Iowa
    in Support of Appellant*

Patrick C. Valencia
Iowa Department of Justice
1305 E Walnut Street
Hoover State Office Building
Des Moines, IA 50319
    *Counsel for Amicus Curiae Attorney Generals for*

3

*Alaska, Arkansas, Florida, Georgia, Idaho, Iowa, Indiana, Louisiana,*
*Montana, Ohio, South Carolina, Tennessee, Utah,*
*Virginia, West Virginia in Support of Appellant*

———————————————

OPINION OF THE COURT

———————————————

**SMITH**, *Circuit Judge.*

Federal Rule of Civil Procedure 1 counsels that the body of rules that follow it are intended "to secure the just, speedy, and inexpensive determination of every action and proceeding." Although more an exhortation than a legal prescription, the language of Rule 1 nevertheless gives voice to fundamental values that are at the heart of our Nation's commitment to process, as parties to litigation seek the vindication of legal rights and the enforcement of legal duties in federal courts. Although we conclude that fairness and justice have been achieved by the settlement ultimately reached by the parties in this consumer class action, whether it was accomplished through the types of efficiency envisioned by the drafters of the rules probably rests in the eye of the beholder.

Rule 23, which is central to the appeal before us, is no less bound by the values invoked in Rule 1 than is any other rule of civil procedure. In the discussion which follows, we not

only address the issues raised by Appellant but also consider the roles played throughout this litigation and its settlement by counsel, by the District Judge, and by an objector.

The instant matter is making its second visit to our Court. Because we are satisfied that the parties before us, and their counsel, have acquitted themselves appropriately, and that the experienced District Judge thoroughly pursued the inquiries required of her in ultimately approving the subject class action's settlement in its entirety, we will affirm.

## I.   BACKGROUND

This is a data breach class action. Data breaches are increasing at an alarming pace, rising nearly threefold in the United States from 2020 to 2024. Ani Petrosyan, *Annual Number of Data Compromises and Individuals Impacted in the United States from 2005 to 2024*, STATISTA (Apr. 2, 2025), https://perma.cc/LS84-6MPZ. The underlying breach occurred within the Wawa convenience store chain, which has approximately 850 locations throughout the mid-Atlantic region and Florida. The chain sells fuel as well as convenience store items such as coffee, pastries, and milk. During the cyber incursion which gave rise to this litigation, hackers stole payment information including credit and debit card numbers, expiration dates, and cardholder names on cards used at all Wawa stores and fuel dispensers.

Wawa discovered the breach on December 10, 2019, and took steps to have it contained by December 12, 2019. On December 19, 2019, Wawa's CEO released a public statement detailing that Wawa had experienced a data security incident

involving malware[1] on its payment processing servers. Wawa's internal investigation determined that the malware began running on March 4, 2019, and affected payment processing systems at potentially all of Wawa's locations until it was contained. On January 27, 2020, the stolen payment information was put up for sale on "Joker's Stash marketplace," an exchange found on the dark web at which stolen card information is bought and sold. *Wawa Breach May Have Compromised More Than 30 Million Payment Cards*, KREBSONSECURITY (Jan. 28, 2020), https://perma.cc/9ADW-ZAH4.

As is common in "class action world," a race to the courthouse promptly ensued. Plaintiffs began filing a variety of state statutory and common law claims in the U.S. District Court for the Eastern District of Pennsylvania ("EDPA") on December 20, 2019, pursuant to the Class Action Fairness Act ("CAFA"). A total of 15 actions were consolidated on January 8, 2020, by order of then-Chief Judge Juan Sanchez of the EDPA. Three litigation tracks were developed, separating the plaintiffs into broad groups: a financial institution track, an employee track, and a consumer track. It is the consumer track that is at issue in the appeal before us. The consumer track was primarily represented by Berger Montague, P.C.; Fine, Kaplan and Black, R.P.C.; Chimicles Schwartz Kriner & Donaldson-Smith, LLP; and Nussbaum Law Group, P.C. Consumer

---

[1] "Malware is malicious software designed to disrupt, damage, or gain unauthorized access to computer systems." *What is Malware?*, MICROSOFT, https://perma.cc/478P-57WG (last accessed May 2025).

Plaintiffs filed a Consolidated Class Action Complaint on July 27, 2020, pursuant to Rule 23(a), (b)(2), and (b)(3). The Complaint alleged a range of counts including negligence, negligence per se, breach of implied contract, unjust enrichment, and violations of multiple state consumer protection and data privacy acts. Plaintiffs sought relief, which included both damages and an injunction requiring Wawa to "(i) strengthen its data security systems and monitoring procedures to prevent further breaches; (ii) submit to future annual audits of those systems; and (iii) provide several years of free credit monitoring and identity theft insurance to all class members." Appx337.

### A. Settlement Discussions

Settlement talks began a few months later. The parties retained a mediator[2] to supervise a mediation which was conducted on September 15, 2020. The session lasted almost twelve hours and was, according to the mediator, "extensive, hard fought, conducted at arm's length, and [] performed in good faith without collusion or other improper conduct." Appx435. The parties emerged from their combined efforts having achieved a settlement in principle.

Class members were to receive a range of benefits as part of that initial settlement plan. The primary benefit provided was either compensation for out-of-pocket losses or

---

[2] Diane Welsh, a former Magistrate Judge in the EDPA, served as the mediator. Welsh was an experienced mediator with JAMS, an alternative dispute resolution service, who had previously resolved over 5,000 cases.

a Wawa gift card. The gift cards were fully transferable e-gift cards[3] that could be applied to the purchase of any Wawa products and were, in the initial draft settlement agreement, subject to a one-year expiration date. Claimants were carefully divided into three tiers. Under Tier 1, customers who affirmed that they spent at least some time monitoring their credit statements could get a $5 Wawa gift card. Total Tier 1 compensation was subject to a $6 million cap and a $1 million floor. Under Tier 2, customers who saw a fraudulent charge that required some effort to sort out could receive a $15 Wawa gift card. Total Tier 2 compensation was subject to a $2 million cap with no floor. Under Tier 3, customers who could show certain out-of-pocket losses caused by the breach could receive

---

[3] No one has suggested in this appeal that the gift cards were coupons under CAFA. *In re Wawa, Inc. Data Sec. Litig.*, 85 F.4th 712, 718 n.7 (3d Cir. 2023) ("*Wawa I*"); *see also Chakejian v. Equifax Info. Servs., LLC*, 275 F.R.D. 201, 215 n.17 (E.D. Pa. 2011) (detailing that "courts have generally considered a coupon settlement to be one that provides benefits to class members in the form of a discount towards the future purchase of a product or service offered by the defendant" (citation omitted)); *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 808 (3d Cir. 1995) (detailing that coupons can benefit defendants by operating as a marketing campaign). Unlike other settlements, "[f]or 'coupon' settlements, the value [for purposes of calculating fees] is the actual value of those coupons actually redeemed by class members or distributed through a cy pres remedy." Principles of the Law of Aggregate Litigation § 3.13 (2010).

up to $500 in cash. Total Tier 3 compensation was subject to a $1 million cap without a floor.

Wawa also agreed to a range of "injunctive" relief to improve its security systems through a continuation of a $25 million investment in security that the Wawa board had authorized, pre-settlement, in February 2020. This commitment included retaining a security firm to assess compliance, conducting an annual penetration test for possible vulnerabilities, operating a system to encrypt payment information at sale terminals in Wawa stores, implementing security procedures at sale terminals, and maintaining written security programs and policies. The proposed settlement also detailed that Wawa would provide class members notice of the settlement via updates posted in stores, a settlement website, and a press release directing class members to the settlement website where they could submit compensation claims.

Only after the settlement terms had been agreed upon did the parties discuss attorney's fees. Defense and class counsel negotiated class counsel's right to seek up to $3.2 million in attorney's fees and related costs. Specifically, Paragraph 79 detailed that "the $3,200,000 amount will be paid by Wawa as directed by the Court." And Paragraph 78 provided that "Wawa shall cooperate with Class Counsel, if and as necessary, in providing information Class Counsel may reasonably request from Wawa in connection with preparing the petition" for fees. Over the course of these proceedings, Paragraph 78 has at times been referred to as a "clear sailing agreement," although the existence or not of such an agreement was not determined prior to this appeal. The settlement was silent about what would happen if the District Court awarded

9

less than the full $3.2 million in fees, which meant that in practice Wawa would retain any reductions in the fees awarded. This is referred to as a fee reversion. *See, e.g.*, *Pearson v. NBTY, Inc.*, 772 F.3d 778, 780, 786 (7th Cir. 2014) (describing a return of funds as a "reversion" or "kicker").

## B.  *Preliminary and Final Approval Proceedings*

Notwithstanding the parties' success in reaching a settlement in principle after a single mediation session, a "speedy" resolution of the controversy, as envisioned by Rule 1, proved elusive. On May 5, 2021, despite logistical complications created by the COVID-19 pandemic, District Court Judge Gene Pratter[4] held a preliminary approval hearing pursuant to Rule 23(e) during which the parties summarized the class features and provisions of the settlement. On July 30, 2021, the District Court issued an opinion preliminarily approving the settlement per Rule 23's requirements. In her opinion, Judge Pratter concluded that the settlement class met the numerosity, commonality, typicality, and adequacy requirements of Rule 23(a). There were over 22 million potential class members, well beyond what was needed to meet the numerosity requirement. Commonality was met because common questions were present, including "how the data breach happened, whether Wawa had a duty to protect its customers' payment card information, and whether Wawa's customers were harmed by the breach." Appx684. Plaintiffs' claims were typical of the broader class, as class members were all victims of the same breach and requested common legal

---

[4] Judge Pratter passed away on May 17, 2024, after serving nearly 20 years on the EDPA.

remedies. And the named plaintiffs and their experienced counsel would adequately represent the interests of the proposed class members. The District Court next determined that the proposed class satisfied Rule 23(b)(3)'s requirement that questions of law or fact common to class members predominate over any questions affecting only individual members. The opinion explained that nothing before the Court even remotely suggested that class members would be interested in litigating their claims individually or that this litigation should proceed in a non-class forum.

Turning to the settlement terms, the District Court looked to Rule 23(e)(2). It determined that there were no deficiencies that would prevent approval under the Rule, which requires a settlement to be "fair, reasonable, and adequate."[5] The District Court was satisfied that the settlement negotiations between the parties had indeed taken place at arm's length. And the Court outlined that the relief offered was adequate, providing both monetary and injunctive relief. Judge Pratter emphasized that the gift cards offered were *not* part of a coupon settlement. The "Court [saw] no reason to doubt that the settlement [would] provide a tangible benefit to plaintiffs and proposed class members while avoiding the costs and risks associated with continued litigation." Appx700-01. Finally, she declared that both the claims process and notice process were sufficient to make potential class members aware of the available relief.

---

[5] The District Court declined to address the issue of attorney's fees at the time of the preliminary approval hearing as she was awaiting additional briefing.

11

On November 10, 2021, class member Theodore "Ted" Frank[6] filed objections to the settlement as permitted by Rule 23(c). He argued that Wawa's notice procedures were improper, the gift card claims rate was too low, and class counsel was "attempting to seize an excessive portion of the settlement proceeds" by basing their fee on the value of the funds made available to the class, especially because most of the relief to class members was not cash. Appx899. He further asserted that the settlement agreement contained an improper clear sailing agreement and that the reversion of attorney's fees to Wawa, should the final award be less than $3.2 million, deprived the District Court of its ability to fix any potential imbalance. Significantly, Frank raised no objections to the certification process or the District Court's decision to certify the class.

In response, counsel drafted a Second Amended Settlement Agreement[7] on November 12, 2021, making Tier 1

---

[6] Frank is the founder of the Center for Class Action Fairness, now part of the nonprofit Hamilton Lincoln Law Institute. He is a frequent objector in class actions and, as noted in his lawyer's declaration on remand, he has appeared previously before our Court. Appx1313 (referencing Frank's appearance in *In re Baby Products Antitrust Litigation*, 708 F.3d 163 (3d Cir. 2013)).

[7] Unrelated to our appeal, counsel filed a First Amended Settlement on April 29, 2021, in response to a request from Plaintiffs in the "employee track" to clarify that the settlement would not sacrifice employees' claims related to data

gift cards automatically available to mobile application users, a change which added approximately 560,000 mobile users to the group of individuals set to receive gift cards. This Second Amended Settlement also eliminated the gift cards' expiration date. Frank was unmoved by the changes. He continued to complain about how the settlement would permit unawarded attorney's fees to revert back to Wawa. So on February 4, 2022, counsel formalized a Third Amended Settlement Agreement (originally docketed on December 21, 2021). This "third round" clarified that Wawa would not benefit from approval of less than $3.2 million in attorney's fees; rather, any such shortfall would be distributed to Tier 1 and Tier 2 card holders. Frank subsequently dropped his objection to the fairness of the settlement under Rule 23(e) on December 22, 2021.

Judge Pratter conducted a fairness hearing on January 26, 2022, to determine if the settlement was "fair, reasonable, and adequate" as required by Rule 23(e)(2). In an April 20, 2022, opinion, she approved the settlement. She confirmed that her analysis regarding class certification under both Rule 23(a) and (b) remained unchanged. She reiterated that class counsel did not present a conflict of interest, a finding she had previously made in ruling on Rule 23(a)(4)'s adequacy requirement. She also determined that the settlement terms were fair and reasonable under Rule 23(e) based on the factors outlined in *Girsh v. Jepson*, 521 F.2d 153 (3d Cir. 1975)[8] and

submitted in an employment capacity. The clarification has no significance for our consideration of the issues presented here.
[8] The *Girsh* factors include:

13

*In re Prudential Insurance Company America Sales Practice Litigation Agent Actions*, 148 F.3d 283 (3d Cir. 1998).[9]

"(1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation." 521 F.2d at 157 (cleaned up).

[9] The *Prudential* factors include:
"[(1)] the maturity of the underlying substantive issues, as measured by experience in adjudicating individual actions, the development of scientific knowledge, the extent of discovery on the merits, and other factors that bear on the ability to assess the probable outcome of a trial on the merits of liability and individual damages; [(2)] the existence and probable outcome of claims by other classes and subclasses; [(3)] the comparison between the results achieved by the settlement for individual class or subclass members and the results achieved—or likely to

The District Court then approved the fee request from class counsel for attorney's fees of $3,040,060, litigation expenses of $45,940, and approximately $100,000 for settlement administration expenses, together totaling $3.2 million. Judge Pratter determined that the factors from *Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190 (3d Cir. 2000), easily supported a $3.04 million attorney's fee award along with other expenses. "*Gunter* factors" used to determine if payments to counsel are reasonable include:

> "(1) the size of the fund created and the number of persons benefitted; (2) the presence or absence of substantial objections by members of the class to the settlement terms and/or fees requested by counsel; (3) the skill and efficiency of the attorneys involved; (4) the complexity and duration of the litigation; (5) the risk of nonpayment; (6) the amount of time devoted to the case by plaintiffs' counsel; and (7) the awards in similar cases." *Gunter*, 223 F.3d at 195 n.l.

---

be achieved—for other claimants; [(4)] whether class or subclass members are accorded the right to opt out of the settlement; [(5)] whether any provisions for attorneys' fees are reasonable; and [(6)] whether the procedure for processing individual claims under the settlement is fair and reasonable." 148 F.3d at 323.

Regarding *Gunter* factor 1, the size of the fund and persons benefitted, the District Court relied on the value of the funds made available to the class, not the amount distributed to the class. Regarding factor 2, the only substantive objections before the Court were raised by Frank. Factor 3, the skill of the attorneys involved, also weighed in favor of approval. The attorneys charged a reasonable average hourly rate of $653; all had significant experience with complex class actions. As to factor 4, the complexity of the litigation, the District Court noted that data breach litigation is "inherently complex," but also that this litigation had not been pending for long. Appx1190. Regarding factor 5, risk of nonpayment, the fact that counsel took the case on a contingency basis weighed in favor of granting the attorney's fees. Factor 6, time devoted, also weighed in favor of granting the award given that attorneys reported nearly 6,000 hours of work. As for factor 7, awards in similar cases, the District Court noted that "other data breach class action litigation has resulted in attorneys' fee awards significantly higher than the $3,040,060 fee requested here." Appx1191.

Finally, a lodestar cross-check supported the requested fee.[10] A lodestar cross-check here produced a value of $3,877,271, based on 5,942 attorney hours and a blended

---

[10] A lodestar cross-check is calculated based on the reasonable number of hours worked by counsel on the litigation multiplied by a reasonable hourly rate, then adjusted up or down depending on case-specific variables. *Lindy Bros. Builders, Inc. of Phila. v. Am. Radiator & Standard Sanitary Corp.*, 487 F.2d 161, 167-68 (3d Cir. 1973).

16

hourly rate of $653. The District Court noted that multipliers from one to four are often awarded in class action cases, and here the number was only 0.78.

C.    *Wawa I*

Enter Frank, as an objector once again. On appeal, he disputed the fee award.[11] In his first visit to this Court, he argued that "class counsel would receive a disproportionate share of the amount Wawa would pay in gift cards or cash." *Wawa I*, 85 F.4th at 717. He opposed what he considered a "clear sailing" agreement whereby Wawa purportedly agreed not to contest class counsel's fee request. *Id.* He also pointed to the long-since removed "fee reversion," which would have returned any reductions in the fee award to Wawa rather than to the class—had it not been taken out of the final settlement. *Id.* And he suggested that attorney's fees should be capped at 25% of the actual claims paid, not the funds offered. *Id.*

A panel of this Court issued a decision on November 2, 2023, vacating the fee award and remanding to the District Court with directions to (1) determine "the reasonableness of the attorney's fees in proportion to class benefit and [(2)] to scrutinize the presence of side agreements." *Id.* at 727.

Regarding issue one, the reasonableness of the fees, the *Wawa I* panel confirmed that courts "evaluate the reasonableness of a percentage-based [fee] award by reference

---

[11] "[N]onnamed class members . . . who have objected in a timely manner to approval of the settlement at the fairness hearing have the power to bring an appeal without first intervening." *Devlin v. Scardelletti*, 536 U.S. 1, 14 (2002).

to *either* amounts paid *or* amounts made available." *Id.* at 724 (citing Manual for Complex Litigation § 14.121 (4th ed. updated 2023)). The panel did, however, remand for additional consideration because, in its view, the District Court "saw itself as bound to consider only the funds made available to the class." *Id.* at 725 (referencing the District Court's statement that "courts consider the funds made available to class members rather than the amount actually claimed during the claims process"); *see also* Appx 1185.

As to issue two, side agreements, the panel expressed concerns that such agreements could "tempt [counsel] to take money from the class in return for a defendant's agreement to swiftly settle." *Wawa I*, 85 F.4th at 725. It noted that side agreements may suggest "that class counsel have allowed pursuit of their own self-interests" to override their duty to absent class members. *Id.* at 719 n.8 (citation omitted).[12] The

---

[12] Concerns about side agreements in class action settlements predate the *Wawa I* panel's opinion. In a May 12, 2016, memorandum, the Advisory Committee on Civil Rules of the Judicial Conference suggested amending Rule 23 to include a provision that "[t]he parties seeking approval must file a statement identifying any agreement made in connection with the proposal." *Report of the Advisory Committee on Civil Rules*, COMMITTEE ON RULES OF PRACTICE AND PROCEDURE OF THE JUDICIAL CONFERENCE OF THE UNITED STATES 3(May 12, 2016), https://perma.cc/J4XZ-U5QR. In its report to the Standing Committee, the Advisory Committee detailed that "[t]he contents of any agreement identified under Rule 23(e)(3) may [] bear on the adequacy of the proposed relief, particularly

panel explained that a district court must therefore carefully "review the process and substance of the settlement" and any fee agreement to "satisfy itself that the agreement does not indicate collusion or otherwise pose a problem." *Id.* at 725-26 (quoting *In re Nat'l Football League Players Concussion Inj. Litig.*, 821 F.3d 410, 447 (3d Cir. 2016)).

A close reading of the *Wawa I* opinion reveals that the panel did not directly hold that a clear sailing agreement existed. Nor did that opinion cite language from the settlement agreement in the course of its analysis. We read the opinion to have *assumed* such an agreement existed here. *Id.* at 725 (referencing Wawa's supposed promise to not challenge fees but not detailing the origins or basis of such a commitment). Focusing on the policy concerns inherent in a clear sailing agreement, the panel defined it as a promise "not to challenge class counsel's request for an agreed-upon attorney's fee award." *Id.* at 725. While explaining that the District Court "correctly identified that clear sailing provisions require close attention," the panel observed that the presence of an outside mediator, though a permissible fact for the District Court to consider when weighing a settlement, was "alone insufficient" to guarantee a fair fee award. *Id.* at 726. Additional review would be needed to confirm that a supposed clear sailing agreement was appropriate. *Id.*

As for the fee reversion, the panel acknowledged that the reversion provision had been removed and did not appear

---

regarding the equitable treatment of all members of the class." *Id.* at 8. The Advisory Committee's proposal was adopted in 2018 as Rule 23(e)(3).

19

in the Third Amended Settlement Agreement. But the panel also explained that it was concerned about the provision having been inserted in the first place. *Id.* Thus, its remand directed the District Court to "explore how the reversion arrived, what purpose it served, and whether its presence, even temporary, suggests coordinated rather than zealous advocacy, that makes the fee request unreasonable." *Id.* at 727.

### D. *Remand Proceedings*

The District Court conducted a hearing on December 5, 2023, in response to the *Wawa I* panel's remand. At the hearing, Judge Pratter asked the parties to provide submissions containing whatever information the parties believed she needed to consider based on the panel's opinion. Notably, Frank expressly declined to argue that collusion had occurred between counsel for both the class and the defense, instead positing that the previous panel had used the word as "just semantic shorthand" for considering potential conflicts of interest between counsel and the class. Appx1214. At that point, the issue of collusion was off the table.

The parties filed their declarations on December 19, 2023. Wawa's counsel reiterated that the attorney's fee was reasonable and that there was no collusion. Class counsel confirmed this account. Frank argued that the circumstances supported an attorney's fee award based on only actual, not proposed recovery. And he pointed out that Wawa had previously implied that there was a clear sailing agreement.

Judge Pratter scheduled yet another hearing—this one held on February 2, 2024—for the purposes of discussing the submissions she had ordered. In the hearing, counsel for Frank

20

highlighted that Paragraph 78 of the settlement agreement had previously been characterized by class counsel as a clear sailing agreement (including in a joint declaration class counsel filed on October 28, 2021). Class counsel countered that counsel for Frank had conceded that there was no collusion in relation to the fee award and that the existence of side agreements was not disputed prior to this appeal.

On April 9, 2024, the District Court issued its remand opinion and judgment that are the subject of this appeal. Judge Pratter ultimately approved the fee award in response to the mandate issued in *Wawa I* to (1) determine if the fee was reasonable and (2) examine the presence of side agreements. Starting with the controversy concerning side agreements, she determined there were none. She also found nothing in or about the negotiations that was untoward or problematic.

The District Court found that "the settlement agreement does not contain and never did contain a 'clear-sailing' provision" as *Wawa I* defined the term. Appx12. She credited the "sworn declarations of class counsel and defense counsel," which stated that no agreements prevented Wawa from objecting to class counsel's fee request. Appx13; *see also* Appx13-15, 19. Wawa's agreement to "cooperate" in preparation for the fee petition meant no more than what the common meaning of that term suggests. More to the point, it did not mean that Wawa waived its right to object, as would be needed to constitute a clear sailing provision. Appx12 ("Facially, this agreement to cooperate in providing information would not prevent Wawa from objecting to class counsel's fee petition.") (internal quotation marks omitted). Beyond that, the District Court also declared that, clear sailing

21

agreement or not, there was nothing improper about the language used. She credited Wawa's counsel Gregory Parks's emphatic and consistent testimony that "[t]here was no 'coordinated' advocacy, no collusion, and nothing other than honest[,] hard-fought negotiations throughout a long process of discussing, negotiating, and executing this sophisticated Settlement of a large matter." Appx19 (quoting Appx1272).

As to any fee reversion, Judge Pratter "firmly reject[ed] the notion that class counsel and counsel for Wawa intentionally omitted reference to the prospect of a fee [reversion] in order to benefit counsel at the expense of the class" or that any collusion took place. Appx 28. She further found that "[t]here was never any discussion of any tradeoff, such as reducing the recovery to the class in order to increase the . . . attorney's fees." Appx22 (citation omitted). And in any case, any reversion was—in the Judge's words—"diligently corrected" prior to her final approval. Appx28.

The District Court next moved to the reasonableness of the fee. She reiterated that the fee award should be based on the funds offered to the class, a result she reached based on the benefits class members received when held up against the limited harm they experienced. The gift cards were a meaningful benefit as they "closely approximate cash." Appx31. The injunctive relief was also "central" to the award and "weigh[ed] strongly in favor of analyzing the fee award against the amounts made available to the class instead of the amounts claimed by the class." Appx36-37. Not only did the settlement force Wawa to formally commit to improving its security systems, the injunctive relief also "directly address[ed] the actual harm suffered by the vast majority of

22

class members," namely, privacy concerns about shopping at Wawa. Appx37.

To bolster its reasonableness finding, the District Court again walked through the *Gunter* factors. She determined that the settlement amendment, objection, and appeal process did not reflect negatively on the skill and efficiency of class counsel. And Judge Pratter noted that the appeal and remand proceedings had reduced the value of counsel's fee by an estimated $408,492 because counsel had been forced to expend multiple hours of additional time litigating the proceedings.

All told, Judge Pratter devoted significant effort to understanding and ultimately approving the settlement. Based on just the record before us, she wrote over 100 pages of opinions and presided over hours of proceedings, including multiple hearings after Frank's first appeal. This included:

- 109 pages of transcripts for the Preliminary Approval Hearing,
- 27 written pages for the Preliminary Approval Order,
- 99 pages of transcripts for the Final Approval Hearing,
- 27 written pages for the Final Approval and Fee Opinion,
- 57 pages of transcripts for the First Status Conference on remand,
- 55 pages of transcripts for the Fee Hearing on remand, and
- 52 written pages for the Fee Opinion on remand.

23

In response to Judge Pratter's Order granting the attorney's fee award, Frank filed a timely notice of appeal on May 8, 2024.

## II. STANDARD OF REVIEW

We review attorney's fee awards under an abuse of discretion standard. *In re Cendant Corp. Litig.*, 264 F.3d 201, 254 (3d Cir. 2001) ("If the court committed no legal errors, we review its award of attorney[']s fees for abuse of discretion."); *In re Prudential Ins.*, 148 F.3d at 342 ("In awarding [class action] attorneys' fees, the district court has considerable discretion.").

This deferential standard is consistent with the fiduciary duty a district judge owes to class members, a duty that requires him or her to carefully analyze the fairness and propriety of the settlement terms. *See In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 307-08 (3d Cir. 2005) ("At the fee determination stage, the district judge must protect the class's interest by acting as a fiduciary for the class."), *as amended* (Feb. 25, 2005).

A district court's factual findings are subject to clear error review. *IBS Fin. Corp. v. Seidman & Assocs., L.L.C.*, 136 F.3d 940, 945 (3d Cir. 1998).

## III. DISCUSSION

We now address three issues presented in this appeal. First, if the District Court violated *Wawa I*'s mandate to scrutinize for any collusion that may have occurred between class counsel and Wawa in allegedly reaching a clear sailing agreement and a provision for fee reversion in the settlement when it reached conclusions that no clear sailing agreement

24

existed and that inclusion of fee reversion was unintentional; second, if the District Court clearly erred by finding that class counsel did not enter any collusive or otherwise problematic side agreements with Wawa; and third, if the District Court abused its discretion in determining that the fee request was reasonable by considering only the amount "made available" to the class instead of also the amount actually claimed by the class.

We will address each issue in turn.

*A. Wawa I's Mandate*

Frank argues that the *Wawa I* mandate established that a clear sailing agreement and *intentional* fee reversion existed between Wawa and class counsel, and that, accordingly, the District Court was required to abide by this framework. We are unconvinced.[13]

A lower court "has no power or authority to deviate from the mandate issued by an appellate court." *Kennedy*, 682 F.3d at 252 (citation omitted). And parties are bound by "issues that were actually discussed by the court in the prior appeal" and by "issues decided by necessary implication." *Todd & Co. v. SEC*, 637 F.2d 154, 157 (3d Cir. 1980). Here, the panel in *Wawa I* asked the District Court to "scrutinize the presence of side agreements." *Wawa I*, 85 F.4th at 727. The District Court adhered to that mandate, which was not premised on the existence of side agreements (they were merely assumed), and

---

[13] We review the District Court's adherence to the *Wawa I* mandate de novo. *United States v. Kennedy*, 682 F.3d 244, 253 n.7 (3d Cir. 2012).

25

nothing in the opinion or record otherwise prevented the District Court from drawing its own conclusions.

We look first to the supposed clear sailing agreement. A clear sailing agreement is an agreement by the defense "not to contest class counsel's request for attorneys' fees up to an agreed amount." *Id.* at 717 n.3 (quoting Howard M. Erichson, *Aggregation as Disempowerment: Red Flags in Class Action Settlements*, 92 NOTRE DAME L. REV. 859, 901, 902-03 (2016)). Clear sailing agreements are not per se impermissible and are not a bar to approving a settlement or fee award. *NFL*, 821 F.3d at 447. They can, however, be "red flags," *Wawa I*, 85 F.4th at 719, and thus a district court must "review the process and substance of the settlement and satisfy itself that the agreement does not indicate collusion or otherwise pose a problem," *NFL*, 821 F.3d at 447.

Prior to remand, the parties and Judge Pratter merely assumed that a clear sailing agreement existed. In a joint declaration class counsel filed on October 28, 2021, the parties indicated multiple times that they believed Wawa had agreed to the $3.2 million attorney's fee award. *See, e.g.*, Appx736 (citing "Wawa's agreement to make a separate $3.2 [million] lump-sum payment to Class Counsel for attorneys' fees, expenses, Service Awards, and Settlement Administrator costs"). And Judge Pratter demonstrated during several stages of the settlement approval proceedings that she presumed the settlement contained a clear sailing agreement. The parties did not raise arguments concerning the existence vel non of a clear

26

sailing agreement, so Judge Pratter never made an explicit finding either way.[14]

Based, no doubt, on the parties' implicit understanding that a clear sailing agreement existed, the panel in *Wawa I* made a similar assumption. *Wawa I*, 85 F.4th at 725. ("Start with the clear sailing provision, where Wawa promised as part of the settlement not to challenge class counsel's request for an agreed-upon attorney's fee award."). Like the District Court, the panel seemingly assumed that a clear sailing agreement existed but did not subject that assumption to scrutiny. For example, it did not describe or include any language from the settlement agreement in its opinion. Importantly, it never

_____

[14] Frank also argues that Plaintiffs should be judicially estopped from arguing that there is not a clear sailing agreement and that Plaintiffs forfeited this argument by not raising it prior to the remand. But because Plaintiffs did not previously argue that there was a clear sailing agreement, judicial estoppel is inappropriate. *See MD Mall Assocs., LLC v. CSX Transp., Inc.*, 715 F.3d 479, 486 (3d Cir. 2013) (stating that judicial estoppel is appropriate when there are "(1) irreconcilably inconsistent positions; (2) adopted in bad faith; and (3) a showing that estoppel addresses the harm and no lesser sanction is sufficient" (citation omitted)). And because we instructed the District Court to examine whether there was a clear sailing agreement on remand, we do not see how Plaintiffs forfeited arguments bearing on that matter. We reject Frank's assertion that the District Court transgressed the law of the case doctrine for the same reasons.

directly held that a clear sailing provision existed. And its remand order tasked the District Court to "scrutinize *the presence* of side agreements." *Id.* at 727 (emphasis added).

The record before the District Court and the panel's opinion also do not prevent a finding on remand that the fee reversion was unintentional. Like clear sailing agreements, courts must be on the lookout for "fee reversions, which 'provide[] that if the judge reduces the amount of fees that the proposed settlement awards to class counsel, the savings shall enure not to the class but to the defendant.'" *Wawa I*, 85 F.4th at 725 (quoting *Pearson*, 772 F.3d at 786 ("If the class cannot benefit from the reduction in the award of attorneys' fees, then the objector, as a member of the class, would not have standing to object, for he would have no stake in the outcome of the dispute.")). And fee reversions may also be red flags. They create the potential for an improper windfall to defendants and thus should receive at least as much scrutiny as do clear sailing agreements. That said, they are still not per se impermissible. *See Pearson*, 772 F.3d at 786-87 ("Neither can we think of a justification for a kicker clause; at the very least there should be a strong presumption of its invalidity."); *Roes, 1-2 v. SFBSC Mgmt., LLC*, 944 F.3d 1035, 1058 (9th Cir. 2019) ("While we have not disallowed reversionary clauses outright, we generally disfavor them because they create perverse incentives.").

Here too, the parties did not dispute the intentionality of the fee reversion prior to the remand proceedings. But they would have had no reason to, as the reversion was not even part of the final settlement. Since it was neither relevant to the settlement nor raised before her, Judge Pratter made no

findings regarding the exact nature of the fee reversion prior to remand. The *Wawa I* panel followed the District Court's lead, not once directly mentioning intentionality in its discussion of the reversion.

As the existence of side agreements had yet to be decided in the District Court, or by the *Wawa I* panel, Judge Pratter was free to draw her own updated conclusions on remand. What is more, because the panel asked Judge Pratter to reexamine the underlying agreements, *Wawa I*, 85 F.4th at 727, it implicitly understood that her analysis could change as part of this exercise. The fact that her framework *did* shift demonstrates that she thoroughly complied with the panel's instructions "to scrutinize" side agreements. *Id*.

We therefore hold that Judge Pratter followed the *Wawa I* mandate even though she found that there was no clear sailing agreement and that the fee reversion was unintentional.

### B.  Side Agreements

Although we reject Frank's contention that Judge Pratter's conclusions regarding the clear sailing agreement and the fee reversion violated the *Wawa I* mandate, we turn to Frank's alternative contention that Judge Pratter's findings were clearly erroneous. He asserts that a clear sailing agreement and intentional fee reversion did exist, and that both were in conflict with class members' interests. We disagree. There may be unique "conflict[s] between the economic interests of [class members] and their lawyers," as "a rational, self-interested lawyer looks to maximize his or her net fee, and thus wants the representation to end at the moment where the difference between his or her fees and costs . . . is greatest." *In*

29

*re Cendant Corp. Litig.*, 264 F.3d at 255. But our recognizing the potential for conflict arising out of the unique nature of the class action device does not require us to view every action the lawyer takes in representing a class as inherently nefarious or even suspicious.

We first examine the supposed clear sailing agreement. Judge Pratter correctly found that the language of the settlement agreement, and specifically Paragraph 78, did not constitute a clear sailing agreement. As she noted in her careful examination, "[w]hile the plain language of paragraph 78 created an affirmative obligation for Wawa to cooperate in providing information class counsel may reasonably request . . . it does not follow that this affirmative obligation also included a different, negative obligation not to contest class counsel's fee request." Appx17 (emphasis removed) (internal citation and quotation marks omitted). Although we decline to adopt a set of magic words needed to create a clear sailing agreement, a mere agreement to cooperate in providing information is, standing alone, plainly insufficient.

Regardless of whether a clear sailing agreement appeared in the settlement agreement, Judge Pratter thoroughly examined the parties' negotiation process and any potential negative implications that process may have had on the class. As part of this analysis, she found no collusion between defense and class counsel during the settlement negotiations or litigation proceedings. We afford great deference to her decision to credit Parks's testimony that the negotiation process was hard-fought and free of collusion. First, we give a district judge's "determinations regarding the credibility of witnesses" "even greater deference." *Anderson v. City of*

30

*Bessemer City*, 470 U.S. 564, 575 (1985); *see also Fisher Bros. v. Cambridge-Lee Indus., Inc.*, 630 F. Supp. 482, 488 (E.D. Pa. 1985) ("Although the court must independently evaluate the proposed settlement, the professional judgment of counsel involved in the litigation is entitled to significant weight."). And second, we acknowledge Judge Pratter's role as a fiduciary to the class, and the careful analysis she undertook as part of that duty. In any event, her finding is hardly surprising—Frank himself concedes that there was no collusion in the settlement negotiations.

There is also no evidence that the class was harmed *at all* by Paragraph 78 or the corresponding negotiations. Frank claims that absent collusion, Paragraph 78 nevertheless created a conflict between the class and class counsel. But he provides no evidence to demonstrate any kind of conflict or harm beyond a theoretical foray into the potential implications of clear sailing agreements. What is more, Judge Pratter already found that class counsel did *not* present a conflict of interest as part of her Rule 23 findings, which Frank did not appeal.

Having detected no problem with the non-existent clear sailing agreement, we next turn to the long-obsolete fee reversion. As a threshold matter, we are unconvinced—as was Judge Pratter—by Frank's claim that the reversion was intentional and therefore that it improperly discouraged scrutiny of the fee award. All signs point to the propriety of the finding that the reversion was unintentional, meaning there could have been no improper collusion or purposeful conflict between the parties. We see no error in Judge Pratter's explanation on remand that, because of the relatively low fee award, the parties likely did not anticipate that anything less

31

than $3.2 million would be awarded. Judge Pratter credited testimony by Parks, Wawa's counsel, that: "I did not anticipate any possibility that the District Court would not approve a $3.2 million attorney's fee award. There was therefore no discussion of what would happen in that event." Appx23, 1276-77. And Judge Pratter was steadfast in her expressions of faith in counsel, adding that she "ha[d] the utmost confidence in counsel's integrity and loyalty to their respective clients" and stating further that "the Court unreservedly credits their declarations regarding how the fee reversion came about through omission and was ultimately removed from the Settlement Agreement." Appx28.

At all events, the harm Frank warns of here is no more than hypothetical. The fee reversion was quickly removed from the initial settlement. So, if less than $3.2 million had been awarded, the remainder would have been available for distribution to the class, not to Wawa. Any hypothetical objectors would also have had plenty of time to raise issues with the fee award after the fee reversion was removed.

## C. Reasonableness of Fee Award

Frank further argues that the District Court erred by relying on the amount "made available" to the class as a basis for calculating the attorney's fee award instead of the amount of claims actually paid to class members. We uphold this ruling.

Lawyers representing a class that has been certified under Rule 23 are entitled to reasonable fees under subsection (h) of the Rule. It sets forth that "the court may award reasonable attorney's fees and nontaxable costs that are

authorized by law or by the parties' agreement." The Rule does not stipulate if a percentage-based fee award should be based on the amount actually paid to the class or the amount that has been made available. Manual for Complex Litigation § 14.121 (4th ed. updated 2023) (detailing that courts may "delay a final assessment of the fee award and to withhold all or a substantial part of the fee until the distribution process is complete").

Our Court has endorsed a flexible approach when considering if a fee award is reasonable. In *Wawa I*, we confirmed that "fees must be analyzed against the benefits to the class case-by-case." 85 F.4th at 722. *See also In re Rite Aid*, 396 F.3d at 303 ("We have generally cautioned against overly formulaic approaches in assessing and determining the amounts and reasonableness of attorneys' fees."); *Powell v. Pa. R.R. Co.*, 267 F.2d 241, 245-46 (3d Cir. 1959) (determining that an attorney's fee award was "reasonable" by "considering all the facts"); *In re Prudential*, 148 F.3d at 342 ("What is important is that the district court evaluate what class counsel actually did and how it benefitted the class."). And we have avoided adopting hardline rules that would make "fee awards exceeding the amount directly distributed to class members [] presumptively unreasonable." *In re Baby Prods.*, 708 F.3d at 178 n.12.

We maintain our flexible approach toward analyzing fee awards in the matter before us. Every class action presents its own unique facts and circumstances that impact the reasonableness of attorney's fees. Those characteristics apply as well to class action settlements. District courts may consider a range of factors when determining reasonableness, including results actually achieved for class members, the manner and

33

operation of any applicable claims procedure, and whether the relief obtained was monetary or nonmonetary. Fed. R. Civ. P. 23 advisory committee's note to 2003 amendment; *see also Wawa I*, 85 F.4th at 724.

On remand, Judge Pratter carefully examined in her updated analysis the relief class members received when compared to the legal services provided. She concluded that a fee based on the funds made available was reasonable. And we agree with her determination.

The attorney's fee award is reasonable because the gift-card based settlement will meaningfully benefit class members. Class action settlements that are predominantly "non-cash" ought rightly to raise our initial suspicions. *In re Gen. Motors Corp.*, 55 F.3d at 803 ("[N]on-cash relief [] is recognized as a prime indicator of suspect settlements."). They call for our close examination. But the gift card settlement here is not problematic. It was designed to make it easy for class members to effectively treat the gift card they received from the settlement as cash spendable at any Wawa store. Many Wawa customers are frequent, or at least occasional, visitors, meaning they would have various opportunities to use their gift cards, particularly given the cards' lack of expiration date. Given that over three-fourths of Wawa's products are priced at less than $5 and that non-cash payments are only increasing in this digitized era, *see The 2019 Federal Reserve Payments Study*, BD. OF GOVERNORS OF THE FED. RSRV. SYS., https://perma.cc/G86A-FZUL (last accessed May 2025) (detailing that non-cash payments rose by $30.6 billion from 2015 to 2018), the gift-card settlement approach agreed upon by the parties makes even more sense.

34

Other elements of the settlement support relying on the amount "made available" to class members to determine the reasonableness of the attorney's fee award. Beyond gift cards or cash, the class received meaningful injunctive relief that *they themselves requested* in the Consolidated Complaint filed months after Wawa had started improving security measures on its own accord. The plaintiffs brought the Consolidated Complaint pursuant to, *inter alia*, Rule 23(b)(2), which contemplates injunctive relief. Their decision to do so indicates that, contrary to Frank's assertions, they did not consider injunctive relief trivial or a way to artificially increase the value of any settlement.

That the injunctive relief here is difficult to value in dollar terms is beyond cavil. But that is not the same as declaring that the relief has no value. Injunctive relief has real value and can be used in determining a reasonable attorney's fee award. *See Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 329 (3d Cir. 2011) (explaining that "the injunctive relief offered by the settlement" should not be wholly disregarded as it "[was] intended to benefit all class members regardless of individual monetary recovery"). At the same time, courts must consider in any process of valuation "the extent of the benefits [actually] received." *Institutionalized Juvs. v. Sec'y of Pub. Welfare*, 758 F.2d 897, 910 (3d Cir. 1985).

Here, the Wawa class members received targeted and tangible benefits stemming from the injunctive relief. The District Court found on remand that the "injunctive relief was rationally designed to address the particular, non-monetary harm suffered by many class members under the circumstances of this case, namely worry[ing] about, and time spent insuring,

35

the privacy of [their] financial information." Appx34. The new security measures which that relief assured helped provide class members with some peace of mind that their information would be protected. Now when class members return to Wawa, they should have less concern about a future breach or other improper disclosure.

Judge Pratter rightly rejected Frank's argument that the injunctive relief would have been implemented even without the settlement. While we endorse the rule in at least one other circuit that a company continuing what it was already doing has "no real value" for class action settlement purposes, *Koby v. ARS Nat'l. Servs., Inc.*, 846 F.3d 1071, 1080 (9th Cir. 2017), Wawa's post-settlement security updates and formal commitment to the relief *are* attributable to the settlement. Wawa did make preemptive changes prior to the settlement, including $25 million informally committed to security updates in February 2020. We cannot discount the likelihood that these updates were spurred, at least in part, by litigation concerns and could well have been merely temporary had the injunctive relief not been required by the settlement agreement.

We also cannot overlook that Wawa, prior to mediation, resisted any enforceable commitment to its security updates. A court order binding a party to continue to perform pursuant to injunctive relief has real value. As the District Court noted, "[t]he fickle assurances of large corporations in damage-control mode immediately following a large-scale security breach are pale shadows of an order by the Court." Appx33. The class itself recognized the value of a binding commitment from Wawa, requesting in July 2020 that injunctive relief be

36

formalized, five months after Wawa had informally committed to improving security.

Finally, apart from the benefits the class received, the nature of the claims process likewise supports a $3.2 million attorney's fee award. Class actions involving little overall harm typically have a low claims rate. *See, e.g.*, Gail Hillebrand & Daniel Torrence, *Claims Procedures in Large Consumer Class Actions and Equitable Distribution of Benefits*, 28 SANTA CLARA L. REV. 747, 747 (1988) (detailing that "claims procedures are ill-suited to consumer class actions in which the class size is very large and the amount of damages per class member is relatively small" as "[t]hese cases are characterized by very low claims rates"). The claims rate here was typical of similar class actions, suggesting that the fee award was reasonable.

The class consisted of about 22 million members and 563,955 claims (counting parties who will receive automatic gift cards through the mobile application), which means that the claims rate was about 2.56%.[15] This claims rate is comparable to other low-harm data breach class action settlements. *See, e.g.*, *Schneider v. Chipotle Mexican Grill, Inc.*, 336 F.R.D. 588, 599 (N.D. Cal. 2020) (0.83% claims rate); *In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 321 (N.D. Cal. 2018) (1.8% claims rate); *In re Target Corp.*

---

[15] Frank wrongly asserts that the claims rate was in fact 0.035 percent, as under 8,000 members submitted a claim. This figure, however, fails to take into account class members set to automatically receive gift cards via the Wawa mobile application.

*Customer Data Sec. Breach Litig.*, No. 14-md-2522, 2017 WL 2178306, at \*1-2 (D. Minn. May 17, 2017) (0.23% claims rate).

Finally, we see no error in the District Court's analysis of, and reliance on, the *Gunter* factors and lodestar cross-check, both of which bolster its ultimate determination that an attorney's fee award based on the amount "made available" was reasonable. *Wawa I*, 85 F.4th at 724. On remand, Judge Pratter repeated her analysis of the *Gunter* factors from earlier in these proceedings.[16] And she confirmed that a lodestar cross-

---

[16] Regarding factor 1, the size of the fund and persons benefitted, Judge Pratter noted on remand that over 560,000 individuals received non-expiring gift cards and cash relief through the settlement, and every class member benefited from the injunctive relief provisions. Factor 2, objections, were limited to Frank and have been carefully considered and rejected by the District Court. Factor 3, the skill of the attorneys involved, also weighed in favor of approval because the attorneys charged a reasonable blended rate of $653 and had "substantial experience" with complex class actions. Appx43-44. Regarding factor 4, the complexity of the litigation, the District Court confirmed this factor did not weigh for or against the award. Factor 5, risk of nonpayment, weighed in favor of granting the attorney's fees because counsel took the case on contingency. Factor 6, time devoted, also weighed in favor of the award as the attorneys billed nearly 6,000 hours. Factor 7, awards in similar cases, weighed in favor of the award because peer cases have resulted in even higher fees.

check also supported the requested fee.[17] The District Court did not err in these findings.

## IV.    CONCLUSION

The great Abraham Lincoln is recognized not only for leading his country through the dark period of the American Civil War but also for his homespun advice on many subjects, including the practice of law. He was, himself, a skilled trial lawyer. Of no minor relevance to the appeal we now rule upon are these words from Lincoln: "The matter of fees is important, far beyond the mere question of bread and butter involved. Properly attended to, fuller justice is done to both lawyer and client. An exorbitant fee should never be claimed."[18] Whether Lincoln's litigation experience included class lawsuits brought pursuant to antecedents to our modern Rule 23 we cannot say. What we do say, though, is that the attorney's fee awarded here was *not* "exorbitant." It was, in fact, fair and reasonable.

Judge Pratter properly determined that side agreements were not present and that the parties suffered no ill-effects from the negotiation process. Her decision to evaluate the attorney's fee award based on the amount made available to the class was also correct. It is past time for Wawa class members to receive

---

[17] A lodestar cross-check here resulted in a negative multiplier of 0.78, meaning that counsel was compensated for fewer hours than they labored. As multipliers from one to four are often awarded in class action cases, this check supports the award.

[18] NOTES FOR LAW LECTURE, 2 THE COLLECTED WORKS OF ABRAHAM LINCOLN 82, (Roy P. Basler ed., 1953).

the benefits they were promised as part of the settlement, especially during a time of inflation.[19] We will affirm the District Court's judgment.

---

[19] Inflation has already taken its toll on the value of the settlement to class members. According to reported inflation rates, $5 in April 2025 has the same buying power as $4.51 in April 2022, when the settlement was first approved by Judge Pratter. *CPI Inflation Calculator*, U.S. BUREAU OF LAB. STAT., https://perma.cc/3EC8-BDM2 (last accessed May 2025).